Reffner *v.* Consolidation Coal Company,
Appellant.

Argued December 11, 1935.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES
and RHODES, JJ.

*Charles H. Ealy,* with him *Charles F. Uhl* and *Simon
K. Uhl,* of *Uhl, Ealy & Uhl,* for appellant.

12

*B. A. Sciotto,* with him *Leland W. Walker,* for appellee.

OPINION BY CUNNINGHAM, J., January 31, 1936:

The only controverted question in this workmen's compensation case is whether the disability from which the claimant was suffering at the date of the award resulted from such "violence to the physical structure of [his] body," on April 10, 1933, as amounted to an "injury by an accident," within the contemplation of Section 301 of our Workmen's Compensation Law of June 2, 1915, P. L. 736. The referee awarded compensation for total disability upon the ground that a sudden "twist" by claimant of his body, in the course of his employment in one of the mines of the defendant, so aggravated a preexisting condition of his back that he thereupon became totally and permanently disabled. The board affirmed the referee's award; the court below entered judgment thereon, and we now have this appeal by the defendant.

It is not disputed that while in the employ of the defendant coal company on April 4, 1926, claimant suffered severe injuries to his back and a fractured leg in a fall of rock. He was paid compensation until he returned to work. X-ray pictures taken in 1928 showed the extent and severity of the fractures suffered in the previous accident. Notwithstanding the condition of his back, claimant worked at his regular employment with reasonable regularity until April 10, 1933. His description of what occurred upon that date reads: "Q. Just describe how you sprained your back. What did you do when you sprained your back? A. I was on my knees in the middle of the road and going to set this timber, this prop, along the trolley line, and I had set already one, and I reached down to get another, got hold of that, but could not get up with that; something hit me in the back at the time and knocked me out."

The extent of plaintiff's injuries in the accident of 1926, as disclosed by x-rays taken in 1928 and 1934, is thus described in the third finding of fact by the referee: "Claimant was examined by Dr. Ben Coe of Indiana, Pa., who also took x-rays of the claimant's back which showed an old fracture of the transverse processes of all lumbar vertebrae. The transverse processes of the first lumbar vertebra on the right side united at an angle; the transverse processes of the second lumbar vertebra, right side, ununited. The transverse processes of the third and fourth lumbar vertebrae also ununited on the left side. The transverse processes of the first lumbar vertebra is also united on the left side. Transverse processes of the third and fourth lumbar vertebrae on the right side united at a bad angle. The transverse processes of the fifth lumbar vertebra, left side, show evidence of having been comminuted with considerable disarrangement of fragments, and these fragments are united to the ilium and sacrum. There is also evidence of fracture of the lamina, right side, of the fifth lumbar vertebra which has united with considerable distortion. There is considerable absorption of the body of the fifth lumbar vertebra, especially the posterior portion."

These findings are fully supported by competent medical testimony and there is evidence sustaining the finding of total disability since April 10, 1933. We have, therefore, the case of an employee who received severe injuries in 1926, but recovered sufficiently to resume his usual employment in defendant's mines and worked when they were in operation down to the date of the occurrence upon which the present claim is based.

An excerpt from the testimony of Dr. Coe reads: "Q. Doctor, to what, in your opinion, is his present total disability due? A. An aggravation of the pre-existing condition. Q. From that you mean the strain he suffered on April 10, 1933, aggravated the injury

sustained on April 4, 1926? A. Yes. Q. It is your conclusion and professional opinion that his total disability is due to an aggravation of the previous condition? A. Yes. Q. By the twist he sustained on April 10, 1933? A. Yes." Several other medical experts expressed the same opinion and the only debatable question is whether the law was properly applied by the compensation authorities to the facts as found.

It is well established by our decided cases that disability or death overtaking an employee at his work is not compensable unless the result of an accident, and that disability or death merely hastened by the work in which the employee has been regularly engaged cannot be treated as accidental. It is also equally well established that the fact that an employee had a chronic condition, which rendered him more susceptible to the injury sustained than an ordinary person would have been, will not defeat his right to compensation.

There is no evidence in this case of any external mishap, slipping, falling, or the like, through which violence was inflicted upon the surface of his body, but the question still remains whether his total disability was a sudden development from abrupt violence to the internal physical structure of his body, inadvertently inflicted by claimant himself. In other words, whether the resulting disability was a natural, normal and progressive incident of the condition from which he had been suffering since the previous accident, or was a sudden and abnormal development attributable to the twist of his back. Upon this question we have the following opinion from Dr. Coe: "The x-ray findings ...... show the old injury which was very very severe. How the man ever worked with a back of that sort, I don't know. Taking into consideration the fact that he had worked more or less continuously for many months prior to April 10, 1933, my judgment is that this ap-

parently trivial injury has resulted in a complete total disability."

We think the evidence upon this record brings the claim within the line of cases of which Keck v. John Mullen Construction Company, 113 Pa. Superior Ct. 564, 173 A. 863; Betts v. American Stores Co. et al., 105 Pa. Superior Ct. 452, 161 A. 589; Murray v. Brown, 107 Pa. Superior Ct. 516, 164 A. 138; Hamilton v. Penna. R. R. Co., 298 Pa. 22, 147 A. 837, and the recent case of Cowell v. F. W. Woolworth Co., 119 Pa. Superior Ct. 185, 180 A. 752, are examples.

In the Hamilton case the claimant had a preexisting arthritic condition. While lifting a weight he was seized with a severe pain in the back which he described as "a twist, spraining [his] back." An award of compensation upon the ground that the arthritis had been aggravated "by a lift or strain" was sustained. In the course of the opinion our Supreme Court said:

"Appellant's main contention on this appeal is that since there was no mishap or slip nor any unusual, unintended or fortuitous happening, it could not properly be said there was 'an accident' within the contemplation of the Workmen's Compensation Act. As already pointed out, the referee found that there in fact occurred a twisting of the body producing a 'sprain,'— a fortuitous happening which, though accompanied by no outcry or other evidence of violence, is sufficient, under our decisions, to constitute an accident within the meaning of the act."

In the Cowell case the claimant, employed as a clerk in a store, while moving a basket filled with merchandise, injured a nerve in her arm. In that case we said: "Although there was nothing unusual in the pulling of the basket, it caused an unusual and unexpected result."

In disposing of the Keck case, we said: "Where ...... there is proof of violence to the physical structure

of the body which causes disability or death, that of itself is an accident unless the break, strain, rupture, or the like, is but an element in the natural progress of the disease occasioned or hastened by the labors regularly performed in one's usual employment."

The present case is clearly distinguishable from such cases as Pelusi v. Mandes et al., 109 Pa. Superior Ct. 439, 167 A. 456; O'Neill v. Lehigh C. and Nav. Co., 108 Pa. Superior Ct. 425, 165 A. 60; and Mooney et al. v. Yeagle et al., 107 Pa. Superior Ct. 409, 164 A. 82, in all of which death, though occurring during usual employment, resulted from the natural and normal development of the respective chronic diseases with which the claimants were afflicted.

Judgment affirmed.